Good morning, and may it please the Court. To begin with, I'd like to thank the Court for agreeing to hear our case at this juncture. And I'm honored to be standing in a courtroom outside of which we see a bust of Chief Justice John Marshall, because you would have seen his words in our brief. His clarion call uttered in 1805 in Adams that it would be utterly repugnant to the genius of our laws if actions for civil penalties could be brought at any distance of time. Here, under the current incarnation of that statute, 2462, we have a question about when the five-year clock starts than FERC's subsidiary argument addresses when it stops. Both, as I'll explain, yield an infinite statute of limitations. That result cannot stand, so we respectfully submit you should reverse. To begin with, if we look at the decision below and we just think about 2462 and what it says and what the courts have said for over 200 years, something about, by the way, the statute of limitations must ring deep in the souls and the minds of jurists because you see landmark jurists wax poetic about it. It's something deeply important to our system of laws. But Section 2462 sets an unqualified deadline for civil penalties across the entire federal government. It does say unless Congress provided otherwise, but it doesn't say unless some statute without expressly altering the civil penalties leads to a different outcome. But didn't Congress leave it to FERC to flesh out that section? No, Your Honor, I don't think that's right. I also think, however, that that goes to FERC's subsidiary argument, which I can turn to now, but it does not go to the court's decision, which was resting only on the statute. It doesn't turn on FERC's administrative injection of new procedures. I can go to FERC's subsidiary argument, but I plan to address that second, however you'd like to proceed, Your Honor. Should I address the court first or FERC first? Let me explain why I said that. Perhaps that would be in order. The court below said, let's look at the statute. We've got 2462. I know I'm in tension with the outcome here because the statute is supposed to have a limitation. And what she found is that the five-year clock started running upon the issuance of this penalty assessment order plus 60 days. That is an event that could happen at any distance in time. It's controlled by the government. It seems to me that your case was premised on the view that a claim must accrue at the time of a violation. Yes. That the statute of limitations must accrue at the time of the violation. Yes. That they must start running. Yes. And I don't think I agree with that for the following reason. I think that it can accrue at the time of a violation. There's no question about that. And perhaps in most cases, it does accrue. I mean, the statute of limitations does start to run at the time that there is a violation. But there's nothing in natural law or common law or whatever that requires that it be so. You can say that a claim accrues either at the time of a violation or a claim can accrue at the time that FERC has a complete case that it can take to court. Either one of those is possible. Okay, which of those should we choose? That's not up to us. It seems to me that the point at which a claim accrues is not some matter of natural law, but is subject to statutory definition. And here, the way it's set up is that FERC doesn't have the right to seek enforcement of its order until that 60-day period has elapsed and there's a failure to pay. And why are we obliged to say that a claim accrues before the very time that an agency has to seek enforcement of its own order? How can that be? Because it's a permissible thing to say, well, the claim doesn't accrue until we have the right to go to court and get a court order enforcing the civil penalty. And what has Congress said about that? That's the question that the judge grappled with below. We know what 2462 says because the Supreme Court told us that in Gabelli. The natural reading is the claim accrues upon the conduct. The judge found otherwise here because she confused what the claim is. She found under the ALJ route, the claim she said clearly is the occurrence of the conduct, which is what Gabelli says. She found the claim here to be something different rather than a claim that the defendants violated the law and should face sanctions, which is the claim in the complaint on page 86 of the joint appendix. She found the claim is for enforcement of an order. I submit to you that section 34, 31 of the Federal Power Act does not support that reading for several reasons. Just try to put it in the simplest terms. What good is a claim if you can't go to court to enforce it? The order that we're speaking of, Your Honor, for one thing, is entirely within the control of the government. And the outcome from going down the road you're sketching out is an infinite statute of limitations, which should give us pause. It's also not what Congress provided for in section 31. If this were a collection action where liability and penalty levels were litigated to finality, the question would be there's a claim for the government for penalties. Let's go collect. But this is not. Well, that would be the situation if the administrative law route had been. That's right. Had been selected. Just one second, though. It seems to me that this is not a hostile question. What I'm concerned with is that the district court may have been confusing the idea of an enforcement of a penalty with the fact that there is a distinct and parallel route that may be selected by a litigant. The litigant has two options in parallel formation for a separate litigation. And what occurs in the district court is not merely a collection. It's a litigation of the merits of the case after which the district court resolves it by judgment. And tell me, if you will, is that the essence of where you think the district court erred? That is, Your Honor. There are two routes to adjudication under the statute. She got that completely correct. One route to adjudication leads to an ALJ at FERC. The other leads here to the Eastern District in Virginia. That's where adjudication is had. We had none below. If you look at the ‑‑ I think where she really went wrong was she confused what the claim is. Counterintuitively, under her decision, at the point an election is made, the claim can pivot dramatically. If you choose the ALJ option, the claim is the conduct is unlawful and sanctions must follow. If you choose the court option, to her, the claim becomes a claim for enforcement of the civil penalty order. That's counterintuitive. But it's not the claim, is it? It's the accrual. It's not the claim. It's when the claim accrues. Well, Your Honor, but we have to know both, right? Because if the question is, if the claim is the conduct is unlawful, pay, then that claim accrues with conduct. If the claim is enforce an order, then, yes, you need to have an order. There's no claim to enforce an order that doesn't exist. I entirely agree with that. That is not, however, what the district court option involves. So is it fair, then, that what you're saying is that the fallacy of the district court's reasoning is that the claim accrues at a different time depending on when the litigant, which option the litigant picks? Yes. Excuse me. It's the same problem, the same wrongful conduct, but it accrues at a different time depending on whether the administrative route is chosen or the district court litigation is chosen. And that is the fallacy of the district court's reasoning. Is that what you're saying? Yes, and I would add to that, Your Honor, that if you look at Section 31 of the Federal Power Act, putting aside that her logic eviscerates 2462, which is a problem, she is looking at the court option through the wrong lens. There was no adjudication at FERC. All FERC is required to do by statute is issue an order, and they could do that at any distance in time. The statute tells the district court it is to engage in de novo review of the facts and the law involved, which is the underlying claim for conduct. It does not say, Congress did not say that the action that's resulted in this case was for review of the penalty assessment order. And if I just might point out two things that I think bring that home. When that order came out, we saw it. We could not do anything. We could not seek agency rehearing. We could not take it to court. We couldn't appeal it. Our clients were not aggrieved because it didn't decide anything. FERC had to bring it to court. Or you could have paid it, I suppose. You could have paid the penalty. Except that our clients, we think they believe they're innocent. But the agency couldn't do anything either for 60 days, right? They had to wait 60 days before they could file a lawsuit. That's true, but they also get to decide when to issue the penalty assessment order. So they've got five years to deal with the 60 days. And, by the way, their tolling argument was waived because it was only raised in a footnote. Is it necessarily waived? Your case law, which we cited in our brief, says arguments relegated to footnotes are not before us. They're waived. But the agency is powerless unless there's a failure to pay the civil penalty that's assessed. The agency is powerless to go to court. Your Honor, if I may, please. Because normally when a claim accrues is when a party has a right to bring an action based on the claim. Well? Somebody has an automobile accident and the claim accrues at the time of the accident because the victim of the opposing party's negligence has a right to go to court. But this is different. There is no right to go to court until the civil penalty is assessed and until there's a failure to pay and until that 60-day period expires, the agency can't do anything. And that whole business is, in a sense, for your benefit, at least to give you some kind of notice of what you're facing in terms of the civil penalty and give you an opportunity to pay before a cause of action is initiated. And that doesn't seem to me irrational in a sense or an impermissible interpretation of the statute. I wonder, in this kind of case where you have steep fines, I think it's a million dollars a day or something, where if we take your view of it, it takes us so long to work these cases up. As you know, the records are thousands and thousands of pages. The records are voluminous. It takes forever to work it up. And if we say, okay, the claim accrues immediately upon a violation, what you put in place is enormous incentives to delay and drag it out and this and this, and then the five-year period will be up before you know it. You think five years is a long time? It's not in a case that involves the complexity that these cases involve. Two points in response, Your Honor. The first is, what greater element of being able to file a lawsuit could exist other than knowing of the claim? And if you look at Judge Randolph's excellent decision in 3M, just a superb piece of work, you see him talking about the fact that, well, harm is an ingredient of a lawsuit. What if the car crash hurts and you don't find out you're harmed for three years and the statute of limitations has run? Does that mean because you haven't discovered the harm that you get to start the clock again? No, it does not. But Judge Wilkinson, I'd like to step back for a second and just explain what actually happens here as a matter of statute and what happened in this case. The government investigative operation is a one-sided show. We've never had any discovery. We answered their questions. We showed up for depositions. To this day, I've spent nine years asking the government, can you tell me what particular trades are unlawful? They've never told us because they don't have to. We never had any process at all. There were dark periods in the government's investigation lasting months and years. You'll see it in their brief, in their chart, where they did nothing. I don't know what they did with their five years, but they had control all the time. And Congress has told us after five years, the clock starts with conduct. It stops at five years. If FERC thinks it's got some special need, that argument is better placed, as Judge Randolph said, in front of a congressional oversight committee, not before this court. So if you look at the statute, though, just to go back to where I was, all FERC is supposed to do is issue an order. It could be a few pages. They have seized upon themselves the job without statute, and actually there's no regulation that authorizes the use of show-cause orders in this particular kind of case. They have turned it into a much bigger production, trying to insert themselves in as a finder of fact. And as Judge, I see my time is out. Might I finish my thought? Well, why don't you save the point for rebuttal, would you? Yes. Thank you. Mr. Viswanathan? I'm happy to hear from you, sir. Thank you, Your Honors. May it please the Court, I'm Anand Viswanathan on behalf of the Commission. This case turns on a simple rule that the Supreme Court has faithfully followed since the early 19th century. A claim accrues when a plaintiff has a complete and present cause of action. For this Court to accept Powhatan's view, you would have to ignore or set aside that standard rule of accrual. Excuse me. Neither 2462, the Federal Power Act, nor the relevant case law supports such a result. So Your Honors had a number of questions for my friend on the other side. I'd like to turn to those now if I can. Judge Wilkinson, you focused on the issue of accrual, so let me address that. There have obviously been many cases cited in the briefs on this issue of accrual. All of those cases really come down to two different kinds of statutes. The first category of statutes allows the plaintiff, agency, or government to file a civil action essentially at will. There's no constraint under those statutes as to when the government may file its action. As to those kinds of statutes, courts have rightfully found that the cause of action accrues at the time of the violations. There's a second category of statutes in which the Federal Power Act belongs. That category of statute requires the agency to conduct a mandatory penalty assessment process and find a violation, and only then does the agency have authority under such statutes to file a civil action in court. As to that second category of statutes, all of the court of appeals cases, with one outlier exception, have found that the civil action cannot accrue until the government has completed its statutorily mandated agency process first. So what you're saying is that it's a pretty basic rule that's been reiterated over and over again, that in this type of statute, a claim accrues when a party has the right to seek court enforcement of its order. That's exactly right, Judge Wilkinson. So the government could take 75 years, turn into another Jarndyce versus Jarndyce, right? They could take 150 years to look into a matter, and from your perspective, there'd be no problem, right? Absolutely not, Your Honor. And that's because the commission has said quite clearly here and elsewhere that 2462 binds the agency's penalty assessment process. What that means is that we have five years from the time of the alleged misconduct to commence an agency penalty assessment process. So from your perspective, the government can totally manipulate statute of limitations. The government defines the statute of limitations then by determining how long it wants its investigation to last, correct? With respect, Your Honor, that's not our position. I think Congress defines the limitations. Yeah, but I'm saying isn't that the practical result of your position? And that's why I'm wondering whether it's logical. Your Honor, that's not the practical result of our position. Why not? Well, because of the fact that Congress in this statute has required the agency to conduct its own process and actually find violations before it can go to court. And so the way that that works out in these kinds of cases— Well, they find a violation, but the defendant doesn't have an opportunity to litigate the merits of the issue. And if the defendant is picking the district court route as opposed to the agency route, the defendant doesn't have any opportunity to weigh in on the merits of the case during this agency process that occurs that results in the imposition of the fine, do they? No, Your Honor, that's not correct. First of all, I mean, you're correct that there are two different processes. Under the alternate option, they absolutely have the opportunity to communicate with the commission. Right, but they don't—they are not fully litigating by choosing the district court route. They are saying we want a court to decide the merits of this issue rather than have the agency decide the merits. Isn't that correct? That is the nature of the choice in the statute. But, of course, it is their choice because if they do want to litigate as soon as possible, if the agency— So what you're saying is it's a tradeoff. If they want the district court to make the determination from the beginning of the merits, then they have to essentially agree to an unlimited statute of limitations. No, Your Honor. Under no circumstances is there an unlimited statute of limitations. The statute of limitations for the agency to commence a process to assess a penalty is five years. The commission has said that quite clearly in Section 4 of our brief. The commission commenced an action here. The investigation— Well, okay, but that's sort of the process for initiating the investigation. But I think Judge Keenan's point is that investigation can take as long as the agency cares it to take. That's not true because the action by the agency is the action suit or proceeding with respect to 2462. So the entirety of the process from the alleged misconduct until the commission commences a proceeding by issuing an order to show cause is five years. So if the Office of Enforcement were to take seven years, then it would be untimely under our view of 2462 because— It goes on for a long time without the statute of limitations running. I mean, you might—the agency, whatever it is, might suspect some wrongdoing. And it looks into something and it investigates something and it may have asked for discovery, but that doesn't mean the statute of limitations is running. Well, our position is that the statute of limitations binds the agency. I know that there have been other courts, other decisions cited in the briefs where agencies had taken the position that 2462 does not apply to the agency process. And in those decisions, the courts—like this is the 3M decision of the D.C. Circuit, for example. And the court in those instances has disagreed because the implication would be that if 2462 did not bind the agency process, then the agency could take all the time it wants. Of course, that's not our position. That's never been the commission's position. I'll point out that there was— this particular process where there's the civil penalty is assessed and then the 60 calendar days and the failure to pay and the authorization at that point to institute a civil action. Is that regulatory? That's all regulatory, isn't it? No. No, that's in the statute, Your Honor. The statute requires notice and an opportunity for a hearing before the commission may assess a penalty. It requires— What about the 60-day period? The 60-day period is also in the statute. So what it says—this is 16 U.S.C. 823B. It states that once the commission assesses the penalty after finding violations, if the subject of that proceeding fails to pay within 60 days of the order, then the commission has authority. The commission shall institute an action in the appropriate district court. So it is absolutely statutory. I will point out on this issue of accrual, there was an argument raised in the appellant's briefs that according to the Supreme Court's Gabelli decision, as a result of that decision, all government causes of action must occur at the time of violation, no matter the statute, no matter the cause of action. No, I don't think they're arguing to Gabelli for that purpose. They're saying that Gabelli provides a helpful insight. It's a different case, no question. But they're looking at Gabelli, I think, in terms of what the Supreme Court said as far as the issue of discovery and that you aren't aided by the fact that you didn't know about a violation. They're arguing by inference, aren't they, really? They're not saying it's a per se rule. I think they explicitly said in their opening brief that it is a five-year fixed clock that starts at the time of violations for all causes of action. That is absolutely not what Gabelli said. I don't – well, I don't think that – I can just say I don't think we accept that Gabelli would necessarily govern the case. Gabelli might give us some helpful insight in terms of what the Supreme Court's thinking in terms of – Correct. And I think that the specific insight from Gabelli that's most relevant to this case is that the Supreme Court reaffirmed the traditional rule on when a claim accrues. And that – it really does decide this case because the statute does not permit the agency to file an action until the various prerequisites in the statute are met. Well, let me tell you what bothers me about your position, among other things, is that the claim accrues at a different time depending on which action you take, the administrative route or the district court route. You have the exact same violative conduct, the exact same conduct, but the claim can accrue 100 years later if you assume the district court route as opposed to you go the administrative law route. How can that possibly be? So, thank you, Judge Keenan. This is a really important point. I think the genesis of this confusion, and there is some confusion here, is the district court, in her opinion, made a statement that under the default option, a cause of action accrues at the time of violations. With all due respect to the district court, this was not an issue that the parties briefed. She did not provide any support for that statement. The statement is not true under the statute. So, if we are, and I think what her point was, she was talking about. If you go the administrative route, when does the claim accrue? If you go the administrative route, the claim, in other words, the civil action is what you're talking about. That accrues after the entirety of the process in the statute is complete. So, what that means is. No, no, I'm talking about the agency route. I don't know if we're using the same terminology. If you elect not to go to the district court. Right, right. I think that's been called the default option in the briefs. So, assuming that we're talking about the default option and we're talking about a civil. Because with respect to the administrative penalty assessment. Whether we're talking, in other words, the agency's action to assess a penalty. Whether we're talking about the default option. So, when does the claim accrue under the alternative option? If we're talking about the agency's assessment of the penalty. It's the same for default or alternate. It's at the time of the violations. But if we're talking about a civil action to enforce the agency's assessment of a penalty. That's when we get different answers based on the statute. So, you're saying you get two five-year periods then. Really, right? The five-year period to determine the assessment. I'm just trying to understand your position. So, our position. And then another five years after you issue the. Our position is that we get 2462 to apply to the agency action. And 2462 to apply to a subsequent district court action. In theory, that's a total of ten years. In practice, your honors, the agency's never taken anything close to that. Here, the civil action was filed within days of the commission having authority to file the action. If I can just clarify the default option piece. Again, whether we're talking about the default option or the alternate option. The agency's action to assess a penalty at the agency level accrues at the same time. It's the time of violations. Once you get to the point where the agency has actually assessed the penalty. And let's assume under either option the subject has refused to pay. Well, we know under the alternate option that the subject, if they don't pay for 60 days, that's when the agency can file an action district court. If, however, we're under the default option, the process is different. Because there's the hearing before an administrative law judge. Assuming that judge recommends penalties, the commission reviews it. The commission assesses the penalty. After that, we're in the normal administrative review. The routine traditional path of administrative review where the subject of that order can request rehearing. Assuming the agency denies rehearing, the subject, again, traditional administrative route here, the subject can file a petition for review in a court of appeals. And the court of appeals would review the agency's substantive penalty assessment. I'm not sure I understood. When does the statute toll or stops under the default option? When does that occur? When you say when does the statute toll? Yeah, under the ALJ option. When does the statute begin to run under that? So, again, if we're talking about the court of appeals has rendered its decision on the commission penalty assessment, let's assume the subject refuses to pay. At that point, the commission could bring a civil action. So once the subject refuses to pay a court of appeals, refuses to pay the penalty after court of appeals affirmance of the penalty, that's when the civil action to collect on that penalty would occur. But, again, if we're talking about the initial commencement at the agency level of assessing a penalty. This recent explanation, you're just talking about when the ALJ's ruling is appealed for substantial evidence. I'm trying to clarify because the argument was, and I think some of the questions were, about there being a different point of accrual for default and alternate. And I think some of that confusion is based on the district court saying that default option accrues at the time of violations. Not exactly true is my point. The question has been raised about your position. I'm very interested in hearing your answer on this. And that is that your interpretation of things allows the government to keep a private company on the hook for an almost indefinite period of time. And what purports under your view and what you say is a five-year statute of limitations is essentially no statute of limitations at all. Now, what is your response to that? Well, my response is that a five-year statute of limitations is a five-year statute of limitations. That means from the time of misconduct, the agency has five years to start the process by issuing an order to show cause to assess a penalty. If the agency fails to do that, then it can't go forward. The action would be untimely. All right. So why is it just to have – why wouldn't the statute of limitations run? You need to come down on – you need to explain this in straightforward terms. Why wouldn't the statute of limitations begin to run from the time that the manipulation violation has occurred? For the civil action, because the agent has no complete and present cause of action, it has no statutory authority to file that action. All right. So what you're saying is – It controls that. I didn't mean to cut you. Go ahead, Judge Wilkins. Go ahead. No, no, please. The agency doesn't always know whether a violation has occurred in this kind of situation. In an automobile accident, you know when a violation has occurred. In a breach of contract action, you're likely to know when a violation has occurred. In this kind of action, you're not certain whether a violation has occurred or when it has occurred, and that's, I suppose, something that you can only come to a determination of after looking at all the evidence, looking at the voluminous discovery, going through a complex series of documents. In other words, to say, well, this limitations period begins to run from the time a violation occurred elides the fact that you don't know when a violation has occurred until you have undertaken a rather extensive investigation. And investigations of unlawful private conduct occur all the time without any kind of statute of limitations beginning to run. So is that a fair assessment of this? Well, Your Honor, certainly at the time of the misconduct, the agency does not know whether a violation has occurred. The statute requires the agency to, if it's going to assess a penalty at the end of the process, it has to find that violations have actually occurred. I want you to respond to my point, which is that you're not certain when a violation has occurred until after you've looked into whether a violation has occurred. That's absolutely correct. That's why the statute is different in a case like this. And if we start holding that every statute of limitations begins to run before the government has a cause of action, it's not only before the government has a cause of action to enforce a civil penalty, it's also before the government would even know whether a violation has taken place. You see what I'm saying? I do, Your Honor. Wasn't that the problem in Gabelli, too? They didn't know about the fraud. And the Supreme Court said that's not good enough. You know, there are a lot of situations where the violative conduct is not immediately known. So why is your situation different? Well, I mean, I think when we're talking about Gabelli, that's when we start getting into the discovery rule. And what the court held there was that the agency could not take advantage of a discovery rule. That's not relevant. And you're not suggesting that that should happen here, right? No, we've never argued. Essentially what you're saying is the manipulative trading occurs on X date. The agency either knows or doesn't know about it. It has five years from that date to issue this order to show cause. If it doesn't happen within that five-year period, there's no discovery extension, you're out. Isn't that right? That's our position. That's correct, Your Honor. We're not trying to argue that the discovery rule applies here. I think that Congress gave the commission broad investigatory authority to look into whether violations have occurred. And so the chart that we included in our brief shows a timeline of all the various things that happened during the course of that four-year investigation by the Office of Enforcement. As I mentioned earlier, for the commission to actually assess penalties, it needs to make a finding that violations have occurred. That is no small thing because it involves the commission making a public statement that a company or a group of individuals has engaged in serious violations of law. And so that informs, that responsibility has to inform the conduct of the investigation because, quite simply, enforcement has to get one. The other thing also is if we took Powhatan's position, would we be encouraging the government, in order to avoid statute of limitations problems, to assess civil penalties earlier rather than later? Because it didn't have, the government may not have had complete information, but in order to avoid statute of limitations problems, the government would assess the civil penalties on the basis of an incomplete investigation. And that doesn't redound to the benefit of the company at all to put the government in a position of assessing civil penalties simply as a protective measure. That doesn't seem to me to be good, and I'm troubled about that. And the statutory scheme here at least has the advantage of having the penalty assessed, a time to pay notice is given to the party against whom the penalty is assessed. The party at that point has the option of paying the civil penalty and avoiding a cause of action altogether, or it can resist paying and then litigate its position in court in which it will have full due process. So, in other words, this particular scheme can work to the benefit of a company in several ways. It can provide fair notice, an opportunity to pay and avoid litigation, or going into litigation at which point no civil penalty can be assessed until a court grants enforcement of the order. That's one benefit that this particular statutory scheme permits companies to have. Another benefit, it does seem to me, is that you don't want the statute of limitations running before the government even knows that a violation has taken place, and you don't want the government slapping civil penalties on people as a protective measure purely in order to avoid a statute of limitations problem down the road. And you're going to have that happen on the basis of very incomplete investigations. So, you know, I'm not clear that this is an anti-industry position. I can see benefits to it. You know, I mean, Powhatan resisted in this case, but I can see benefits to it. I think all of that is absolutely correct, Your Honor. It is absolutely the case that the Office of Enforcement and the Commission would have to cut short the amount of investigation that happens in order to ensure no statute of limitations problems if this court were to accept Powhatan's position. You'd have to assess the penalty sooner rather than later. And, you know, as a CEO of an energy company, I'm not sure that that would redound to my benefit. None of this is pleasant from the standpoint of an energy company because, you know, whether it's you or the SEC or whatever, these proceedings, you know, they're long and they're very unpleasant for the company involved. But the alternative could be substantially worse. That's certainly correct. Another issue is that if this court were to accept Powhatan's position, it gives the subjects of these kinds of investigations a significant incentive to go as slow as possible to force the agency to act quickly. These are discovery-intensive processes, so that is no small matter. Of course, that's contrary to the very purpose of a statute of limitations, which is to bring things to a conclusion sooner rather than later. And with their position, the incentives are all to drag it out. That's absolutely correct. That's contrary to the purpose of a statute of limitations. That's absolutely correct, Your Honor. I see that my red light is on. If the court has further questions, I'm happy to address them. Otherwise, I will stop. Hold on a minute. Sure. All right. Thank you. Thank you, Your Honors. Your Honors, FERC just pivoted away from the district court's decision, away from the discussion you and I had, Judge Wilkinson, about the claim accruing when all causes of action are assembled and the orcas is ready to sing. They agree that the accrual happens in the first instance with the conduct. They want the two-clock rule from Meyer that's their alternative vehicle here. That rule is flawed for the reasons we laid out, and Judge Keenan, you talked about it. It's five years plus a promptly, whatever that means, plus another five years. When we point out promptly is ungoverned by any timeline, they tell us to file a mandamus action. The question is five years from what? Under FERC's position, we at least know within the five years, you know, when it starts and all parties are appraised of the point at which the statute begins to run. But under your position, it's five years from what? Because there can be a lot of disagreement about, number one, whether there's a violation and how severe it is and how severe the civil penalty should be and whether certain violations. Sometimes violations occur over a large period of time. You can have multiple violations. Do we ever going to have a different statute of limitations for each of those? But the FERC situation here at least provides a certain certitude and definitiveness to it that I don't, that I think is maybe lacking respectfully in your perspective. Your Honor, my friend from FERC just said they're on the clock from the point of the violations. They have to issue their show cause order, which is completely extra statutory. We've dealt with that in our brief. Then after a promptly period, they get another statute. So they're claiming the same point of initial accrual as we are. The district court did not view it that way. They've thrown that decision over the side, and now they're posing something very different to you, which is completely wrong. If you look at what acts, so I think both sides agree, Your Honor. There's a discovery rule. There's conduct. They're agreeing with me. The clock starts. They just say they get to invent through administrative fiat their own ending point. There is no statutory or regulatory basis for the show cause order notion. They have no authority under the statute to make any findings. He was saying that the process and the 60-day process and the court enforcement process, that that would be, that that's statutory. They're claiming that once the civil penalty is assessed, okay, that there's no incentive for the agency to delay. Once the civil penalty is assessed and there's a failure to pay, you would think the agency would want enforcement of its order. And if there's a violation, you would think that the agency would want to investigate and learn about it. In other words, there may be incentives for the agency to delay. I grant you that. But there are also within the scheme incentives for the agency to move so that it can collect on what civil penalties are due and can enforce the statutory mandate. So to say that they're purely incentives to delay, it seems to me overlooks the fact that there are, that yes, they're always where agency action is concerned. They're not the most prompt people in the world. There are plenty of incentives for them to delay. But there are also incentives for them not to delay. One is to get enforcement of their order. And two, they have a statutory mandate to prohibit these anti-manipulation practices that they would want to bring to bay. So to say that the incentives run all one way, that's not true. They run both ways with respect to agency behaviors. With all due respect, Your Honor, I am not here talking. Gabelli was not talking. The statute does not talk about agency incentives. We don't have to go try and parse through what subtle incentives the law gives to the agency or the defendants. We have a statute. It gives a clock. FERC agrees the clock starts ticking. But they've got the wrong stopping point. And they're proposing an infinite statute. The stopping point they pose is their show cause order process, which is not the sort of proceeding the court in Gabelli talked about that would arrest fading memories and deal with evidence being lost. It's not an evidentiary proceeding. It's their own invention. When FERC passed regulations two years after 31 was put into the Federal Power Act. Let me ask you one final question, sir, because it goes to the heart of my concern, which is that we would be overturning a great deal of case law and a rather settled understanding that a claim accrues when an agency has a complete and present action to enforce an order or when a party has a complete and present opportunity to bring a cause of action in court. It does seem to me to be hard to press the proposition here under these circumstances that a claim accrues before a party has a right to go to court to enforce the claim. That's that's that's the proposition. Your Honor, FERC agrees with me on this. You're talking about the second clock. I thought that I thought what your friend was saying was that as they have taken the sort of conservative position by committing themselves to done that, but that ultimately the statute of limitations that matters is at the tail end of the process. When the 60 day window has expired and the penalty has been applied to your client, but that that first process is not anything that's dictated by regulation or by statute or otherwise, but they're committing themselves to that in order to avoid this issue of an endless investigation. Their litigation position below and their alternative position here, you can look at the briefs. There's no mystery about it is that there are two clocks. So they're imposing on themselves a statute of limitations. Well, the statute does not itself impose. That's because they've invented that or disagree. They've imposed that by assuming it in litigation because they've invented the show cause order process and they don't want to leave themselves open to the charge that is endless. So they adopted the first circuit's Meyer decision. They agree when the first accrual is, but their district, their stopping point is extra statutory and and does not meet the standards. Gabelli set forth for the finish line here because we had no adjudicative process. No fated memories are arrested. I understand, Your Honor, is that this is. A bit of an odd collection of arguments, but we did not invent their two clock argument. We did not invent the show cause or process. And what I was about to say, Your Honor, if I may just complete this final thought, I sit down is when when when Congress passed Section 31 of the Federal Power Act, FERC came out with regulations and it talked about the penalty assessment order being a proposed penalty. FERC has no authority under the court route to make any findings of fact. The judge below agreed with us on that. Counsel, thank thank you so much. Before you sit down, I want to make sure that each of my colleagues has had. The opportunity to ask every single question that they want. OK, we'd like to come down to council and we'll take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Albert Diaz